601 A.2d 380

COMMONWEALTH of Pennsylvania, PENNSYLVANIA
STATE POLICE, BUREAU OF LIQUOR CONTROL
ENFORCEMENT

v.

VARIOUS ITEMS SEIZED FROM LEWIE'S
LOUNGE ON JANUARY 5, 1989.

Appeal of Lewis E. EGBERT.

COMMONWEALTH of Pennsylvania, PENNSYLVANIA
STATE POLICE, BUREAU OF LIQUOR CONTROL
ENFORCEMENT, Appellant,

v.

VARIOUS ITEMS SEIZED FROM LEWIE'S LOUNGE
ON JANUARY 5, 1989, Appellee.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 29, 1991.

Decided July 24, 1991.

Publication Ordered Jan. 3, 1992.

William J. Kubiak, for appellant.

Stanley J. Wolowski, for appellee.

Before COLINS and SMITH, JJ., and NARICK, Senior Judge.

COLINS, Judge.

Lewis E. Egbert (Egbert) appeals an order of the Court of Common Pleas of McKean County (trial court), dismissing both Egbert's and the Commonwealth of Pennsylvania's (Commonwealth) exceptions to the trial court's order requiring the forfeiture of items, including equipment, materials and utensils, found in Lewie's Lounge.

Egbert is the owner of Lewie's Lounge located at 434 South Avenue, Bradford, Pennsylvania, and was found guilty of selling alcoholic beverages on his premises without a license. Before opening the lounge on South Avenue, Egbert owned a smaller tavern. However, for reasons not pertinent to this opinion, the license from the smaller tavern was never transferred to the South Avenue tavern. Nevertheless, Egbert stocked the South Avenue tavern with various alcoholic beverages and proceeded to operate the unlicensed tavern.

On December 10, 1988 and December 14, 1988, undercover members of the Pennsylvania State Police purchased alcoholic beverages at Lewie's Lounge and subsequently raided the tavern and seized the items at issue in this case. These items included:

(1) 36 straight chairs red cushion black legs;

(2) 8 bar stools black cushion;

(3) 4 bar stools brown cushion;

(4) 8 cocktail tables brown top;

(5) 2 speakers brown and black color;

(6) 1 jukebox Rowe AM1 with Lewie's name;

(7) 2 gum ball machines with stand; Kiwanis sign attached;

(8) 1 piano Winter brand name;

(9) 1 Penncrest receiver—12130 serial;

(10) 2 condom machines; 1 pink 1 white color;

(11) 1 brown color metal dolly;

(12) 1 Penncrest electric range white color;

(13) 1 remote control box TV archer;

(14) 1 Mr. Coffee system;

(15) 1 box with toaster and blender;

(16) 2 fire extinguishers; 1 Sentry—1 General Detroit Corp.;

(17) 1 meat slicer;

(18) 1 Gloekler green door from cooler;

(19) 1 Nesco deep fryer;

(20) 1 stainless steel range hood;

(21) 1 note tablet; Crown graphics and printing;

(22) 1 cigarette machine—C143872 serial number;

(23) 2 notebooks Kendall cover;

(24) 1 pool table—United Billiards;

(25) 1 TV Zenith make with remote control

(26) 1 J.C. Penney stereo rec. (1) and speakers (2) modular component;

(27) 1 J.C. Penney microwave oven;

(28) 1 Hoover upright vacuum sweeper;

(29) 4 glass and wood cooler doors;

(30) 1 rack with chips, pretzel assorted;

(31) 1 $CO_2$ tank green color—1 W.C. Field picture;

(32) 2 metal shelves from cooler;

(33) 2 $CO_2$ tanks grey color with gauges behind bar;

(34) 1 envelope containing documents and photos from behind bar;

(35) 1 cold plate with lines;

(36) 1 stainless steel three-well sink;

(37) 1 single well stainless steel sink;

(38) 3 wooden shelves approximately 7 ft. by 1 ft.

(39) 2 shelves approximately 4 ft. by 6 in. back bar wall.

The issue to be decided is whether the trial court erred in ordering the forfeiture of the above-listed items of personal property found on the premises where illegal sales of alcohol occurred.[1] The record clearly shows that Egbert operated a speakeasy, an unlicensed tavern, illegally selling alcohol, in violation of Sections 491(1)[2] and 492(2)[3] of the Code, which prohibit the sales of liquor, malt, beer or other alcoholic beverages without a license. Moreover, Section 211(a)(3) of the Code explicitly authorizes the seizure of *equipment, materials,* and *utensils* which are or have been used in the unlawful sale of liquor, alcohol, malts, or brewed beverages.[4]

Finally, pursuant to Section 602(e)[5] of the Code,

[i]f the Commonwealth shall produce evidence that the property in question was unlawfully possessed or used, the burden shall be upon the claimant to show (1) that he is the owner of said property, (2) that he lawfully acquired the same, and (3) that it was not unlawfully used or possessed ... but if it appears that said ... *equipment, material or utensil* was ... unlawfully possessed or used, the court shall order the same destroyed, delivered to a hospital, or turned over to the board or enforcement bureau.... (Emphasis added.)

1.  In an appeal challenging a forfeiture order, neither the Pennsylvania Rules of Civil Procedure, nor the Liquor Code, (Code), Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101—9–902, requires the trial court to make formal findings of fact and conclusions of law. Our appellate review pertains to the trial court's application of the Code. We examine the informal findings of fact and conclusions of law by the trial court and decide whether the record convincingly demonstrates the violation charged. *One Homemade Trailer v. Commonwealth,* 71 Pa.Commonwealth Ct. 542, 455 A.2d 284 (1983).

2.  47 P.S. § 4–491(1).

3.  47 P.S. § 4–492(2).

4.  47 P.S. § 2–211(a)(3).

5.  47 P.S. § 6–602(e).

The Code clearly authorizes the seizure of materials, equipment and utensils used in the illegal sale of alcohol. In *Commonwealth of Pennsylvania v. Berresford,* 139 Pa.Commonwealth Ct. 556, 590 A.2d 1379 (1991), this Court held that property is illegally used or possessed when it is possessed for the purpose of violating the Code and is an integral part of an illegal operation, held to facilitate and advance an illegal purpose. In *Berresford,* inventory, including beer and malt beverages displayed for public consumption, was held to be an integral part of an operation of an illegal beer distributorship. Additionally, cash in the amount of $56.46 was held to be an integral part of the distributorship because testimony indicated that this money represented proceeds from the illegal sales, as well as change for future sales in the distributorship.

In *One Homemade Trailer,* this Court affirmed the seizure of a truck which transported beer to an unlicensed tavern. Because the truck delivered the beer which was sold in the unlicensed tavern, the trailer was found to be used for the illegal sale of beer.

We agree with the Commonwealth's argument that "the equipment, materials and utensils ... were used either to promote the sale of alcohol, facilitate the service to customers, or to accommodate the customer's convenience or entertainment in [the] unlicensed tavern." [6] Each item on the list was an integral part of Egbert's operation of the unlicensed tavern and, therefore, was subject to forfeiture and seizure. The 36 red chairs, 12 black and brown bar stools, and the 8 cocktail tables provided the accommodation and seating for customers who patronized the illegal tavern. The jukebox, piano, stereo system, television and remote control, pool table, cigarette machine, and the two condom machines provided entertainment and convenience for patrons of the unlicensed tavern. These items made the tavern attractive to customers, thereby facilitating its operation. Items which facilitated the maintenance of the unlicensed tavern include the Mr. Coffee system, toaster, blen-

6. Brief for Commonwealth at 14.

der, meat slicer, coolers, deep fryer, steel range, microwave oven, vacuum sweeper, cold plate with line, metal dolly, 2 steel sinks, the shelves, and the fire extinguisher. Each of these items enabled Egbert to operate the tavern in an attractive manner and facilitated the illegal sale of alcoholic beverages. The rack with chips and pretzels provided concessions for patrons of the unlicensed tavern, thereby encouraging the sale of alcohol to patrons eating these snacks. The 3 $CO_2$ tanks were used in connection with the bar's tap system for the dispensing of soft drinks and beer sold at the bar. These were also integral parts of the unlicensed tavern's operation.

Testimony of record in this case indicates that the 2 notebooks seized by the Bureau contained information related to bar tabs and purchases of individual patrons. Hence, these also evidence and were integral parts of the illegal sale of alcohol in the tavern. The other note tablet and envelope containing documents and photos from the bar were also related to the bar's operation and, therefore, were integral to it as well.[7]

We agree with the trial court's conclusion that the Commonwealth properly seized all of the items listed on the trial court's order, because each item was an integral part of the illegal operation of an unlicensed tavern.

Therefore, we affirm the order of the trial court directing the forfeiture of the items on the list, with the exception of the two gum ball machines, which shall be returned to their appropriate owner, upon proper petition to the Court of Common Pleas of McKean County.

ORDER

AND NOW, this 24th day of July, 1991, the order of the Court of Common Pleas of McKean County in the above-

7. The only items which were not integral to the operation of the illegal tavern were the 2 gum ball machines labeled Kiwanis indicating that they were the property of the Kiwanis Club. The Kiwanis Club collects money for charity and, therefore, the gum ball machines were not integral to the purpose of selling illegal alcohol.

captioned matter is affirmed, with the exception of the two gum ball machines, which shall be returned to the appropriate owner, upon proper petition to the Court of Common Pleas of McKean County.